Filed 9/13/23  In re Alexa S. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re Alexa S., a Person Coming Under the Juvenile Court Law. | B316979 |
| | (Los Angeles County Super. Ct. No. 21CCJP04693A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| JUAN D., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Philip Soto, Judge.  Affirmed.

Karriem Baker, under appointment for the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Dylan Roy, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

The juvenile court removed then-infant Alexa S. from the custody of her father, Juan D., and ordered family enhancement services after it sustained a petition pursuant to Welfare and Institutions Code section 300, former subdivision (b)(1) (failure to protect),[1] finding that Juan had sexually abused Alexa's mother, Dolores R., when Dolores was 13 years old and Juan was 24 years old, which led to Alexa's birth and criminal charges against Juan for statutory rape, and that he had violated court orders prohibiting him from contacting Dolores. While acknowledging the undisputed evidence of sexual abuse, Juan contends on appeal there was no evidence Alexa was at any risk of serious physical harm to support the court's jurisdiction finding and disposition order. Juan's jurisdiction challenge has been mooted by subsequent events. We affirm the disposition order.

_____

[1]     The Legislature amended Welfare and Institutions Code section 300, effective January 1, 2023, in part by rewriting subdivision (b)(1), to now specify in separate subparagraphs various ways in which a child may come within the jurisdiction of the juvenile court as a result of the failure or inability of the child's parent or guardian to adequately supervise or care for the child.

Statutory references are to the Welfare and Institutions Code.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Section 300 Petition and Detention Proceeding*

In October 2021 the Los Angeles County Department of Children and Family Services filed a section 300 petition alleging Juan's sexual abuse of Dolores and his failure to abide by no-contact orders placed Alexa at substantial risk of serious physical harm (§ 300, former subd. (b)(1)). The petition also alleged under section 300, former subdivision (b)(1), that Dolores suffered from depression and suicidal ideation that rendered her unable to care for Alexa and placed Alexa at substantial risk of serious physical harm.

According to the Department's detention report filed October 2021, Juan and Dolores met when she was 12 and one-half years old and became sexually intimate when she was 13 years old and he was 24 years old. Juan told Dolores to keep their relationship secret because he could get into trouble. A few months after their physical relationship began, Dolores discovered she was pregnant. Juan did not want the baby; but, by the time Dolores learned she was pregnant, it was too late in the pregnancy for Dolores to obtain an abortion.

In April 2021, when Alexa was born, Juan initially told the Department he was not Alexa's father. Dolores, the subject of a separate dependency proceeding, was then living in foster care.[2]

In May 2021 the Department obtained Juan's and Dolores's consent to voluntary family maintenance services. Juan and

---

[2]  A separate section 300 petition alleged, among other things, Dolores's mother had failed to protect her from Juan's sexual abuse. That petition was sustained in August 2021 and is not at issue in this appeal.

Dolores agreed to have no contact with each other. When Alexa, born several weeks premature, was released from the hospital, she and Dolores lived together with Dolores's foster parents.

In August 2021 after Juan's arrest on charges of statutory rape, Dolores exhibited signs of severe depression and expressed thoughts of suicide. Dolores told the Department Juan and his family had blamed her for exposing their sexual relationship and placing Juan in legal jeopardy. Dolores said Juan had made clear to her he wanted "nothing to do with this baby." Dolores also revealed Juan had provided her with cell phones so they could remain in contact despite the no-contact orders. Dolores's foster parents stated Dolores was often on her cell phone and believed, based Dolores's comments to them, she and Juan had been in frequent contact despite their voluntary family maintenance services agreement and the criminal court's no-contact order.

In September 2021 Dolores's foster mother reported that Dolores had become extremely depressed. Dolores feared Juan could be deported and told her foster mother she wanted to run away with him. Dolores's foster mother expressed concern about Dolores's mental health and believed Dolores was more interested in Juan's welfare than Alexa's or her own.

Juan neither visited Alexa nor maintained contact with the Department after he signed the voluntary family maintenance services agreement. The Department was finally able to contact Juan in October 2021 after Dolores provided the Department with Juan's updated contact information. Juan denied being in contact with Dolores or purchasing cell phones to facilitate such contact.

By the time of the detention hearing, Dolores had received emergency mental health treatment, including medication for her

depression, and was feeling more stable. The court detained Alexa from Juan and released her to Dolores's custody under the supervision of the Department with a court-ordered safety plan that included no contact with Juan pending the jurisdiction hearing.

2. *The Jurisdiction/Disposition Hearing*

According to the Department's jurisdiction/disposition report, Dolores told the Department's social worker in November 2021 that, when she and Juan first met, she did not tell him her age and he did not ask. Later she lied to him and told him she was 16 years old. Juan told her to keep their relationship secret because he was an adult, she was a child, and he could go to prison. When Juan was arrested, he threatened Dolores, telling her that "when he got out [of jail] he would come and kill my family and me." Dolores initially did not tell anyone about the threat, but explained it was a significant reason for her fear and depression. She had since started taking medication for depression and was feeling better and able to care for Alexa. Dolores did not intend to run away with Juan, who wanted nothing to do with Alexa. She insisted she would never leave her baby.

When the social worker interviewed Juan in November 2021, he denied ever telling Dolores to keep their relationship secret. He said he did not know Dolores was a minor until after she became pregnant. Juan denied being in contact with Dolores in violation of his agreement and criminal court no-contact orders. He also denied purchasing cell phones for Dolores or threatening her or her family. He acknowledged he had not remained in contact with the Department, but said he did not understand the voluntary family maintenance services contract he had signed.

5

He had only finished first grade and did not know how to read English, Spanish or Q'anjob'al, the dialect he and Dolores spoke. Juan stated he was told by the social worker not to contact Dolores and he had abided by that instruction. Juan stated he had not met his daughter and wanted a relationship with her.

The court sustained the allegation against Juan under section 300, former subdivision (b)(1), and dismissed the allegation relating to Dolores. The court explained, "We tried to work with the mother and the father voluntarily to keep the two away from one another and to keep this baby safe after it was born because of the illegal sexual contact by the father. The father refuses to do that and thereby puts this mother and the child at risk of emotional and physical abuse."

Proceeding immediately to disposition the court removed Alexa from Juan, finding by clear and convincing evidence that Alexa was at risk of harm in Juan's care and "[n]o services can be put in place to keep the child safe with [Juan]." The court released Alexa to Dolores in a home-of-parent order with family maintenance services. The court ordered family enhancement services for Juan, including monitored visitation in accordance with the conditions of the criminal protective order. The court set a section 364 review hearing for May 2022, which was later continued to August 2022.

3. *Post-appeal proceedings*

While the case was pending on appeal, the Department on August 9, 2022 filed a section 342 petition and a section 387 petition. Each petition added a new allegation that Dolores had failed to provide Alexa with basic care and supervision. The court detained Alexa from Dolores.

At the October 2022 jurisdiction/disposition hearing on the section 387 petition, Dolores pleaded no contest to, and the court sustained, the failure-to-protect allegation and released Alexa to Dolores's care with a home-of-parent order. The court dismissed the section 342 petition without prejudice.[3]

## DISCUSSION

1. *Juan's Jurisdiction Challenge Is Moot*

"A court is tasked with the duty to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. A case becomes moot when events render it impossible for a court, if it should decide the case in favor of plaintiff, to grant him any effective relief. For relief to be effective, two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*In re D.P.* (2023) 14 Cal.5th 266, 276 (*D.P.*) [cleaned up].)

Juan contends the court's jurisdiction finding is not supported by any evidence, let alone substantial evidence, that

---

[3] On April 19, 2023 we granted the Department's request for judicial notice of the juvenile court's October 12, 2022 minute order and the sustained section 387 petition.

his sexual abuse of Dolores, which he concedes occurred, posed any danger to Alexa. However, even if we were to agree with Juan and reverse the jurisdiction finding as to him, jurisdiction over Alexa would continue based on the juvenile court's sustained supplemental section 387 petition concerning Dolores. (See *In re Briana V.* (2015) 236 Cal.App.4th 297, 308 ["the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent"]; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1489.) Accordingly, we cannot grant Juan any effective relief. (See *D.P., supra*, 14 Cal.5th at p. 283 [where "jurisdictional findings have been made as to both parents but only one parent brings a challenge, the appeal may be rendered moot"].)[4]

### 2. *The Court's Disposition Order Removing Alexa from Juan's Custody Is Supported By Substantial Evidence*

The paramount purpose of the dependency laws "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2, subd. (a); see *In re Cole L.* (2021)

---

[4] Juan does not identify, nor can we conceive of, any basis warranting discretionary review of the court's now-moot jurisdiction finding, given the undisputed nature of Juan's sexual misconduct. (See *D.P., supra,* 14 Cal.5th at pp. 285-287 [court may consider on a case-by-case basis whether it is appropriate to exercise discretionary review despite mootness of issue, keeping in mind the overarching goal of providing maximum protection for children with a focus on preserving the family whenever possible].)

70 Cal.App.5th 591, 601; *In re A.F.* (2016) 3 Cal.App.5th 283, 289.)

After a dependency petition has been sustained pursuant to section 300, the court may order a child removed from the physical custody of a parent based on its finding, by clear and convincing evidence, that the child would be at substantial risk of physical or emotional harm if the parent were to live with the child and there are no reasonable means by which the child can be protected without removal. (§ 361, subds. (c)(1) [parent with whom the child resided at the time the petition was initiated], (d) [parent with whom the child did not reside at the time the petition was initiated]; *In re T.V.* (2013) 217 Cal.App.4th 126, 135; see *In re Anthony Q.* (2016) 5 Cal.App.5th 336, 347.) "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re D.B.* (2018) 26 Cal.App.5th 320, 328; accord, *In re T.V.*, at pp. 135-136; *In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.)

Because an order for removal under section 361, subdivisions (c) and (d), must be based on clear and convincing evidence, we "must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005; see *In re Nathan E.* (2021) 61 Cal.App.5th 114, 123 ["[i]n reviewing for substantial evidence to support a dispositional order removing a child, we 'keep[ ] in mind that the [juvenile] court was required to make its order based on the higher standard of clear and convincing evidence'"]; see generally *In re I.J.* (2013) 56 Cal.4th 766, 773 ["'In reviewing

a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court""]'].)

The "appellant has the burden to demonstrate there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re D.B.*, *supra*, 26 Cal.App.5th at pp. 328-329.)

Without disputing his sexual abuse of Dolores when she was 13 years old and he was 24 years old, Juan contends that evidence, without more, is insufficient to demonstrate Alexa was at risk of harm in his custody. Whether or not that is correct, the record before the juvenile court contained far more evidence of the risk of harm to Alexa. Dolores told the Department Juan had threatened to kill her and her family for exposing his abuse and sending him to jail. Juan also repeatedly flouted court orders prohibiting him from being in contact with Dolores, demonstrating a no-contact order was insufficient to protect Alexa or Dolores while Alexa was in her custody. Given Juan's threats and disregard of court orders, there was ample evidence to support the court's finding by clear and convincing evidence that removal of Alexa from Juan's custody was necessary and there were no other reasonable means to ensure Alexa's safety.

## DISPOSITION

The juvenile court's November 18, 2021 disposition order is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.